The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Raylene D. Grisho presiding. Okay, we will call case number 4-250-332, Heather McGownd v. Illinois-American Water Co. et al. Counsel for the appellant, would you introduce yourself for the record? Attorney Patrick Ginettin for the appellant, Heather McGownd. And counsel for the appellee? Kristi Kapuska for the appellee's City of Peoria and Officer Nehemiah Doyle. Thank you. All right, counsel, you may proceed. Thank you, Honor. Good afternoon. May it please the court and counsel. This case is before the court on a motion to dismiss that was granted by the circuit court against the City of Peoria and Nehemiah Doyle, resulting from injuries that occurred on one of its roadways. I know that the court frowns upon resuscitating facts, but I do think it's important to state that this is a lot more simple than what is briefed in that this is a city street that was under construction, owned by the City of Peoria, that they had a legal duty to maintain a reasonably safe condition. The City of Peoria was obligated under state law to follow the Uniform Manual in the state of Illinois pertaining to roadways and road construction, signage, and barriers and warnings. And this work was being performed by Illinois American Water, but it's still the City of Peoria street. And they still have obligations under the law to make sure that the laws of the state of Illinois and the Uniform Manual are conformed with. And this construction area containing barricades did not conform to the Uniform Manual. And the plaintiff alleged that the construction work being done did not conform with the standards contained in the Uniform Manual by just utilizing these barrels, that there was no proper warning under the Uniform Manual and the barricades required for lane closures. This is a construction area and choices made on how to block and warn the lane closures that did not comply with state law. And it did not comply with city ordinance in that they did not follow the Uniform Manual as outlined in the complaint. The plaintiff alleged conduct in this fashion was both negligent and willful and wanton on the City of Peoria. The first thing I'd like to say is that the city moved on multiple immunities. The immunities obviously are very fact specific. And these are sort of blanket applications of the immunities that the city asserted without any, broadly speaking, factual findings. Usually trial courts and in higher level courts do not favor granting 2619 immunities without more factual basis. And that goes into the first immunity that we are talking about here, the traffic control devices immunity that they've raised under 3104 of the Tort Immunity Act regarding the initial providing of regulatory devices signs. That's a very specific immunity. And as the Martin and Nellie case versus City of Chicago tells it, there's been a universally rejected absolute immunity under 3104. And the city doesn't dispute based upon any of the arguments or what's contained in the complaint that this was an area under construction with a lane closure. It doesn't dispute that it didn't conform with uniform code on the placement of signs. The only thing that I can understand that they're arguing is, is that the initial placement of what was there grants them immunity, which is not what the law tells us. The law tells us that municipalities can absolutely be held negligent for placing the wrong devices. I don't know if I cited it in my brief, but one case is on point is the governmental inter-insurance exchange versus judge in front of the Supreme Court. And that court very plainly said that when a municipality doesn't conform with the Illinois manual on uniform traffic control devices, the municipality can be negligent in placing the wrong devices. And that's exactly what the holding was in the case of Martin and Nellie versus City of Chicago. And in that case, they were doing construction work. The city workers were establishing safety barricades and a flagman, but they removed those during a lunch break. And the loss of the barricades and the flagman resulted in a worker at the scene being unprotected where he suffered serious injuries. And the court very plainly said 3104 doesn't apply. And part of the reasoning was that had the city followed the uniform traffic control devices for the expert report that it would have prevented the plaintiff's injuries. I think also important is the Supreme Court of Snyder versus current township, where they also said that the negligent placement of a warning sign in advancement of a curb on a did not give the municipality immunity under 3104. I think that these cases all make it very clear. Whenever there's a decision made to place things in an area, the word initial doesn't preclude a municipality from being negligent in making decisions and putting the wrong things there that don't conform with the vehicle code that don't conform with the Illinois manual and which don't conform with what is safe and that doing so is negligent. I think it was in Jefferson versus city of Chicago. The court talked about this immunity being rejected by the courts and a reading of the statute. I think they said if the legislature wanted to immunize public entities from all wrongful conduct in the placement signs and signals, it could have done so. And they didn't. And interestingly, the city of Peoria's single case it cites is the West case where I believe a left-hand turn signal was not used and claimed as negligent by the plaintiff. There was no allegation that there was a plan in place that failed to conform with any laws or vehicle code or uniform code. It was just a basis that the plaintiff said that the left-hand turn signal was insufficient given the roadway and therefore was negligent on the part of the defendant which the court rejected stating that was the initial placement of a sign and they weren't going to second judge that and that that's the sort of thing that 3104 immunizes. And that's the sort of scenario where I'm thinking of like a four-way intersection where stop signs are placed at two sides but they decide not to do a four-way stop. And as long as it doesn't violate the uniform code or the state vehicle code or the uniform manual, I think that that would afford them immunity in making that decision. But I think where those decisions are made in contradiction to the laws that don't provide a safe intersection that it would be a completely different situation. And in this case, I think the decision made was one that violated the uniform code inside of the complaint and therefore the defendant can be held liable. Interestingly, they also said that it applied to Nehemiah Doyle. I don't remember specifically allegations of Nehemiah Doyle being alleged to have placed wrong devices at the scene. So I don't know what that argument is about but I don't think that the plaintiff was expecting Nehemiah Doyle to place proper signage there. I think that that's a whole separate incident. So I don't know what that argument is about. I know that was raised by this court recently last year, I think in Eddington versus City of Springfield, which didn't involve roadway construction. It involved a downed light pole that a police officer approached and then left the scene of later. But that didn't have to do with a construction zone in place or placement of signs that had been done or had been done improperly. Moving on to discretionary immunity. The court dismissed the case based upon discretionary immunity, which was also a blanket immunity. Specifically, interestingly, the City of Peoria had the burden to show which discretionary immunities to apply to which factual scenarios and they didn't provide any details or facts either in the circuit court or in this court to say how discretionary immunity applies. Courts in general are very hesitant to grant discretionary immunity at the pleading stage on a 619 motion and that's because we really don't know what the facts are. But in general, whenever asserting these immunities, the statute requires that it involve a public employee involving the determination of policy or the exercise of discretion. We know that they cite Nehemiah Doyle, but there's no other public official cited by the City of Peoria that's entitled to discretionary immunity. And the statute isn't a broad one that applies just to the city itself. It deals with city officials. And while they do identify Nehemiah Doyle, we don't know who else they're claiming is entitled to discretionary immunity. It's never been raised. It wasn't brought up on affidavits. So we don't know who those are. So that was absolutely improperly ruled on because we don't even know what employees were exercising discretion and how they exercise discretion. But specifically with regards to traffic control devices, the city applies this blanket immunity saying the overall broad-reaching decision on whether or how to deploy traffic control signals is entitled to 22101 discretionary immunity. And that's absolutely contradicted by established case law. In Robinson v. Washington Township, a 3rd District case from 2012, that's one where there was a complaint over a pothole that caused injuries to a driver. And the trial court dismissed it based on discretionary immunity. The appellate court reversed ruling that repairing public roadways are primary ministerial act, which municipalities can be negligent. And they specifically ruled that the township was required to complete the repairs in a reasonably safe manner. The tort immunity does not immunize it from liability. I think the Supreme Court said the same thing in Snyder v. Current Township. It held that discretionary immunity abrogates the duty under Section 11304 of the Vehicle Code, which mandates all traffic devices conformed to the state manual and said that discretionary immunity does not apply in the placement of those traffic signals. In terms of the actions of Doyle, specifically, again, the defendant states that all decisions made by Doyle were judgment calls. Judgment calls are not the legal standard for discretionary immunity. The moving party, the City of Peoria has to show the court that the person was acting as an employee that held a position determining policy that involved discretion and that the employee was engaged in both the determination of policy and exercise discretion when performing the act. We don't have these factual issues before us to know if Officer Doyle is entitled to discretionary immunity. There's nothing on the face of the complaint to establish these wrongs for the defendant, and there's nothing argued by the defendants that would provide them this sort of immunity. We know Officer Doyle was responding to a crash scene. He was engaged in his official police duties and investigating that crash site, and we don't know what he was doing, what he was investigating, who he was communicating with. Was he communicating with Public Works, the water companies? Were his decisions made and his alone, or was he advised by supervisors? Was he given directions, orders? These are all things that we don't know. Because of that, you can't just dismiss discretionary immunity on the facts of the complaint without having more discovery done and knowing exactly what is happening. And that leads into my next argument on the immunity side, the police protection immunity found at 4102. Again, this is a very fact-specific argument. It has to be established by the moving party of the City of Peoria that Officer Doyle was engaging in something other than traditional law enforcement, meaning he was engaged in a police protective services is what the case law establishes. But again, we know that Officer Doyle had responded to another crash there. He was responding to a vehicle crash and doing a police investigation, very much clearly a traditional law enforcement duty. What he did after that, we don't know. Was he investigating the area to determine if there was vandalization? Was he investigating it to see if the signs had been removed? Was he determining if there was some sort of criminal investigation that needed to be done? These are all things that are done as part of a traditional law enforcement as opposed to a police protection function. And again, he might be afforded immunity later on under 4102. But at this stage of the game, we don't know factually what he was doing, who he was being directed by, and if it was part of a traditional law enforcement duty versus a police protection duty. Well, Mr. Ginnett, and just based on the allegations in the complaint, what did plaintiff allege in the way of Officer Doyle's actions? That these actions were part of his execution and enforcement of the law as distinguished from police protection or service? What specifically was alleged? I believe the allegations stated that he was responding to another crash site because there was a crash in the same area specifically right before this and that he was acting as a police officer for the city of Peoria. And that in doing so, he was calling the streets department requesting placement of additional barricades. That he was acting as a police officer in warning drivers on the roadway regarding this crash scene. That he placed his police vehicle in front of the opening with his police lights on to warn drivers of unsafe condition in the roadway. And that he had responded to an unknown female driver driving her vehicle into this road opening in the roadway based upon the construction resulting in a tow truck removing the vehicle from the opening. So, you know, the police protection statute in the cases that we've seen, I think of the scenarios like they talk about where there's a stranded motorist on the side of the road and they need help. That's clearly police protection versus official police work. And the allegations of the complaint indicate that he's exercising his duties as a police officer and responding to a crash site and determining what is going on at the scene, getting tow trucks and then contacting city officials about this opening in the roadway and making a determination. So, is he looking at the roadway and saying, this doesn't conform with city code. There's an issue here. We need to get other city departments involved that is alleged in the complaint. And that would be something that a police officer would do as part of an investigation as opposed to just helping out an individual. Officer Doyle was looking at city property and looking at it saying what is wrong here is the basic underlying gist of what I find out. But again, we don't know more. And that's why the cases on 4102 immunity state that there does need to be investigations and factual basis to know exactly what was going on. And at the pleading stage, we don't know what's going on. And before you run out of time, I just want to ask you in regards to leave to amend. Did you file a motion for leave to amend? I did not. Okay. And was there a request made to the court directly to the court requesting an oral motion for leave to amend? Excuse me. I believe there was. And I think that I asked the court if we could get back specific findings so that I could move to amend the complaint. But it's hard to amend a complaint without knowing what the dismissal is based upon. And honestly, it was just a very broad dismissal based upon, I think, everything. And when I asked for additional information to know exactly why the case was dismissed, I was just told that it's based upon the allegations in the complaint and that was it. And that's where these facts specific things come into place. I don't know what immunities apply to what because it was such a broad dismissal without specific factual findings by court. There's no way of knowing why the case was dismissed. The court never entered its reasoning. And I know my time's up. Do I have a minute just to briefly talk about the city? And the last thing is, is this broad argument that there's an agreement between the city and Illinois Council? I think you can address that on rebuttal. Okay, thank you. Sure. Thank you. Go ahead, counsel. Thank you. May it please the court counsel again, Chrissy Kapuska for Appellee's City of Peoria and Officer Nehemiah Doyle. This case is really about who the Tort Immunity Act says bears responsibility for traffic control devices. And we believe the legislature has answered that very clearly. Almost every claim against the city arises from the alleged failure to provide barricades, signs, lights, warnings. That is exactly what 3104 was enacted to cover. This is an absolute immunity for failure to initially provide the traffic control devices, even if the condition was dangerous, and even if the city knew about that. Plaintiffs and counsel has attempted to distinguish this as a construction site rather than just a signage case. But the statute doesn't make any type of distinction between initial placement of permanent signs or initial placement of temporary signs. It expressly includes barriers, warnings, devices, lights, again, exactly what's alleged here. Now plaintiff referred to both the Martinelli and Jefferson cases just a few minutes ago, and the city acknowledges Martinelli says that the immunity and 3104 isn't absolute when the municipality affirmatively creates or worsens the hazard. That's not the fact we have here. Jefferson said something similar, and both Martinelli and Jefferson limit 304 only where the city affirmatively place, remove, or alter the traffic control devices and therefore create a new hazard. The city isn't alleged to have placed or modified any of the traffic control at all. So this claim is really a non-placement claim and an insufficiency claim, which is what 3104 immunizes. I'd also like to point out that this is not a city of Peoria construction case. This was work undertaken by a franchisee, Illinois American Water. And it's true, we don't have a lot of information about exactly what was occurring at the site to necessitate the repair or the construction, but this was not a city contractor case. Again, Illinois American is one of the franchisees for the city along with many other franchises we have. This is not work the city ordered. This is not work the city had any type of operational control over. This is not a condition that the city created. While we may have had regulatory control, either through the franchise agreement or through a federal, state, or even a local requirement on what signage is required, either permanently or temporarily, that regulatory control doesn't automatically morph itself into operational control. And so the plaintiff's attempt to impose some type of vicarious liability or derivative liability really fails because we are not insurers of franchisee conduct. If permit authority alone really created tort liability, then every municipality in Illinois would become the insurer of every excavation. And there's no Illinois law that has really gone that far. Plaintiff's counsel made good points as to the discretionary immunity arguments that were raised under 201. Decisions about when, where, and how to deploy traffic controls really do involve resource allocation, prioritization, or judgment calls and that is textbook 201. For Officer Doyle himself, the complaint alleges the discretion, where he placed the squad car, calling for barricades, leaving to respond to a shots fired call. The plaintiff tries to recast Doyle's actions here as ministerial, but there's no ordinance or statute that required the city to act in a specific way at a specific time at the scene. Even if the court doesn't address the 201 immunity arguments, the city still wins on 401 for traffic control devices and we believe that Doyle would still be immune under 102 for police protection services. Under that argument, every allegation against Doyle really boils down to he should have stayed, he should have done more, he should have ensured safety. Those are classic inadequate police protection arguments. Doyle is immune as a matter of law. Now plaintiff cites to both Glover, or the plaintiff cited to Glover as saying that there is no absolute immunity, but Glover says absolute immunity applies arguably even when officers make things worse. In their brief, plaintiff also suggested that the services being provided by the officer at the time didn't amount to police protection, but notably the very case that he cited also refers to Kavanaugh, which was cited in the city's brief, where they talk about responses to a motor vehicle accident. The Tort Immunity Act doesn't allow the courts to second guess the emergency response triage. And again, while it may be a fact-specific requirement, when those pleadings contain the allegations themselves that fall within the tort immunity buckets, as a matter of law, the court gets to apply those immunities to the allegations and dismiss the claims. Plaintiff touched briefly on the franchise agreement between Illinois American and the city. And first, the city absolutely recognizes that it cannot contract away its tort liability by contracting with Illinois American Water for those services. What that agreement does, however, is provide a lot of context as to who was responsible for the excavation being done by Illinois American Water. And that franchise agreement clearly discussed trenches and assigned excavation safety to Illinois American Water. An indemnification clause that's in there, again, doesn't limit city liability in this particular situation, but it does acknowledge a distance between Illinois American Water and the city. They are not acting as an immediate contractor. We do not have operational control over the franchisees' day-to-day duties. Finally, I just wanted to touch briefly on the argument about whether or not the plaintiff should been allowed to amend his complaint in this case. While we understand he might have wanted more facts development in this case, there are really no facts that can be alleged that would get him out or get her, excuse me, outside the scope of the immunities here. Further, this was not the second complaint. This was the third amended complaint that was before the court and the second motion to dismiss that was before the court by the city. The plaintiff was well aware of all the immunities that had been argued. They'd fully briefed them. They never tendered a proposed response. There were no new laws, no new facts. And again, the immunity defects here are legal, not factual, and there are no amendments that could cure the defects. So, the plaintiff really wrong defendants for the wrong conduct and the Tort Immunity Act exists precisely to end cases like this at the pleading stage. We believe that this dismissal should be affirmed in full. Thank you. Thank you. Any questions? Seeing none, you can go ahead with your rebuttal. Thank you. Just briefly, the city talked about, and I didn't discuss in detail earlier, this franchise agreement. The allegation is that this franchise agreement somehow prevents the city from being sued for the conduct of Illinois American Water. I think that's absolutely contrary to established law. The city didn't cite any case law that would allow them to assert this position. Their claim is basically that because it's all actions of Illinois American Water, I think what they said is it's not operational control by the city and that there was no control over the water company and the work that it performs. But this again goes back to what the original complaint arguments are and what a city is responsible for. And we know that a city can be liable for things that happen on their property. And in this case, there was extreme control in the city code that required permitting to put this hole in the ground. We're at the discovery stage. We don't know what permits were obtained and granted. We don't know if there are any plans submitted to the city showing what work was going to be performed, whether or not they showed the city that they were going to perform with the uniform manual and traffic control devices. But the city has in their code is the responsibility and obligation to both review the plan and grant permit in order to dig a hole in the road. And that's significant control in requiring the permitting stage and approval of the work being done. So I don't know how they can state that this is not some sort of control. I think that the underlying thing is, is that the city is responsible to maintain its own streets. There's city code, state code on the uniform manual pertaining to what needs to be done here. The city can be legally responsible for its contractors performing work on its streets. And the city has absolute oversight and control over this being done through the permitting process and through the requirements from the state of Illinois and the uniform manual. And I think that, again, this is all things that are in the complaint that are codified and also case law establishing. And the city didn't provide any case law to state that they should not have any obligation over this road, other than to point to a franchise agreement with an indemnification clause where the franchise agreement and the city code really requires them to have absolute control over the work being performed. All of these things are fact issues. They can be raised again by the city, but without more discovery, without knowing what's going on, I think it's improper on a 2-6-19 to dismiss everything outright without having more information. And that's why the courts have been hesitant in general in the past and very rarely grant 2-6-19 motions without having a very specific conduct raised by certain individuals working for the what was going on and why the immunities apply to certain people or times and places and decisions. And we don't know what those are yet. Thank you. Thank you. Seeing no questions, the court will take this matter under advisement and the court will stand in recess.